UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| ROY VINKEMEIER, | : |
| Plaintiff, | : |
| vs. | : |
| | : Case No.: 13-CV-5934 (VSB) |
| JACO FINANCIAL LLC, | : |
| JACK AUGSBACH, | : **ECF CASE** |
| TRINITY ASSET SERVICES a/k/a | : |
|    TRINITY ASSET SERVICES. COM., | : |
| JUROJIN INCORPORATED and | : |
| MARSHALL KLEIN, | : |
| Defendants. | : |
| And | : |
| BROWN BROTHERS HARRIMAN and | : |
| BROWN BROTHERS HARRIMAN TRUST | : |
|    COMPANY, N.A., | : |
| Relief Defendants. | : |

---

**DECLARATION OF PAUL W. VERNER
IN SUPPORT OF PLAINTIFFS' MOTION SEEKING AN ORDER PERMITTING
ALTERNATE AND SUBSTITUTE SERVICE OF THE COMPLAINT
PURSUANT TO F.R.C.P. 4 and THEREBY RESOLVING THE COURT's SUA
SPONTE ORDER TO SHOW CAUSE ISSUED SEPTEMBER 16, 2014**

I, Paul W. Verner, an attorney admitted to practice before this Court, dec1are that the following statements are true under penalty of perjury:

1. I am a Member in the law firm of Verner Simon counsel to Plaintiff, Roy Vinkemeirer, in this action.

2. I submit this declaration in support of Plaintiff's request that the Court not enter orders of dismissal on unserved Defendants as it contemplated by its *sua sponte* Order to Show Cause issued September 16, 2014 for good cause as argued further herein.,

3.      Instead, Plaintiff seeks an order permitting alternate service of varying forms in light of the divergent nature of the Defendants in this action and the fact that they have not appeared in this action despite apparent knowledge of it.  The primary reason for their non-appearance, Plaintiff contends, is that in attempting to redress the initial fraud which deprived Plaintiff of his stock property, Plaintiff unearthed the Defendants' intentional construct for avoiding US regulatory oversight of certain stock sales and transfers involving US citizens and publically traded US companies.  This construct allowed the initial fraud to be hidden from regulators as well.

**THE FRAUD AND TRANSFERS OF PLAINTIFF'S GATEKEEPER SHARES**

4.      Plaintiff, ROY VINKEMEIRER is a man of limited means and works primarily as a farmer.

5.      VINKEMEIRER was induced by fraud and artifice to transfer 600,000 shares of his Gatekeeper USA, Inc. stock (the "Gatekeeper shares") to Defendants, JACO Financial, LLC and its sole member Jack Augsbach[1] in late 2012.  See, Complaint and Declarations of Roy Vinkemeirer and Howard Richards, passim, **Exhibits A, B** and **C**.

6.      Irrefutable documentary evidence demonstrates that Plaintiff's Gatekeeper shares were transferred in turn by the other Defendants and finally end up in the possession of Defendants BROWN BROTHERS through a series of transfers between  Defendants JACO/AUGSBACH, TRINITY ASSET SERVICES a/k/a TRINITY ASSET SERVICES. COM., JUROJIN INCORPORATED and Defendant BROWN BROTHERs' client SIX SIS AG a/k/a SIX Securities Services in Switzerland.

7.      Attached here as **Exhibit D** is a true and correct copy of the Stock Transfer Agent records

---

[1] Augsbach used the unknowing Derek McCartney to take in 250,000 shares.

which were subpoenaed by the undersigned in this action from FIRST AMERICAN STOCK TRANSFER CO., INC.

8.      The Transfer Agent's records demonstrate that subsequent to the fraudulently induced transfer by Plaintiff VINKEMEIRER to AUGSBACK and JACO on October 29, 2012, AUGSBACK and JACO then caused the 600,000 shares to be transferred on November 21, 2012 to the Defendant, JUJORIN INC., using trading accounts at defendant TRINTY ASSET SERVICES a/k/a TRINITY ASSET SERVICES. COM.  See, **Exhibit D**, Bates ## , 0001, 0004-5,  00010, 00013, 00015, 00018.

9.      **Exhibit E** hereto contains the previous Affidavit of Derek McCartney and McCartney's account records from his account held with TRINTY which were submitted to this Court (the Honorable Victor Marrero in support of Plaintiff's initial Order to Show Cause. (see DE#2).

10.     The Transfer Agent's records further demonstrate that subsequent JUJORIN INC. receiving the 600,000 shares, it then effected the transfer using CEDE & CO.[2] to SIX SIS AG a/k/a SIX Securities Services accounts held at BROWN BROTHERs See, **Exhibit D**, Bates ## , 00032, 00035-36,  00056,  00059, 00062, and 00063 .

11.     JUROJIN, a Panamanian corporation domiciled in Panama City, Panama, in tandem with TRINITY, is an offshore online brokerage that purports to be a Bahamian corporation and purports to have offices in Costa Rica.  Its website, *trinityassetservices.com* is accessed only through passcodes and logins and is listed as operating out of Costa Rica with an intentionally obfuscated website administration operating out of France.  See, McCartney Declaration.

---

[2] A DTC Broker/clearing agent company

12. TRINITY's Internet traffic data and records indicates that nearly 100% of the traffic is from the United States and concerns similar share transfers and purported "brokerage services".

13. In addition, although TRINITY purports to be operating out of Costa Rica and its employees provide Costa Rican telephone numbers, TRINITY also provides "toll-free" numbers that are intended to be free from the US but which, in reality, cannot actually be called from outside the U.S.

14. Defendant KLEIN, according to Plaintiff, has some part in the design and intentional operation of TRINITY in this manner, in furtherance of the fraudulent scheme and enterprise, as well as to avoid the reach of the U.S. securities law enforcement. <u>See</u>, Declaration of Roy Vinkemeier.

15. Upon information and belief, it appears to Plaintiff that KLEIN and TRINITY, working with and instructing AUGSBACH and JACO, had TRINITY combined all of the Plaintiff's Gatekeeper stock certificates into one single certificate which was thereafter transferred again into the name of Defendant, JUROJIN, a Panamanian company as set forth above.

16. Mr. Howard Richards has discovered that transfer agent records confirm the aforesaid transfers and movements of my Gatekeeper stock certificates. See the accompanying Declaration of Howards D. Richards.

17. Once transferred to JUROJIN, we have discovered that legal possession of Plaintiff's Gatekeeper stock was subsequently transferred to BROWN BROTHERS, located at 140 Broadway New York New York, into a client omnibus account maintained by BROWN

BROTHERS' client, SIX SIS AG a/k/a SIX Securities Services, on behalf of JUROJIN.

18. Immediately after the transfer to BROWN, Plaintiff's Gatekeeper stock appeared on the books of BROWN as confirmed weekly by the Depository Trust Corporation ("DTC"). **Exhibit F**. Declaration of Howard Richards.

19. These BROWN DTC confirmations correspond directly in the private accounts of AUGSBACH, JACO and KLEIN as seen in the TRINITY online accounts for these Defendants.

20. The fraud and the conversion of my Gatekeeper stock enabled Defendants, AUGSBACH, JACO, and KLEIN, to liquidate Plaintiff's Gatekeeper stock, transfer those shares freely to any third party with an account also held at TRINITY. Declaration of Roy Vinkemeier.

21. Likewise, the Defendants, AUGSBACH, JACO, and KLEIN, then liquidated the shares and wire transferred funds to themselves and third parties. Declaration of Roy Vinkemeier.

22. Immediately after the TRINTY accounts were obtained by the fraudsters and BROWN received transfer of Plaintiff's fraudulently procured Gatekeeper stock, the Defendants, AUGSBACH, JACO, and KLEIN, immediately commenced liquidating Plaintiff's Gatekeeper shares and collected and distributed the fraudulent proceeds among themselves. Declaration of Roy Vinkemeier.

23. On January 29, 2013 and March 12, 2013, Plaintiff demanded the return of his Gatekeeper stock from AUGSBACH and JACO. Declaration of Roy Vinkemeier.

24. Immediately after Plaintiff made the first demand, on February 2, 2013 Defendant

KLEIN transferred 160,000 shares of my Gatekeeper stock from his personal account at TRINITY to JACO's account at TRINITY. Declaration of Roy Vinkemeier.

25. Plaintiff's remaining shares of the fraudulently acquired/transferred Gatekeeper USA stock, as well as the proceeds of the sale of that fraudulently acquired stock (the Defendants' ill-gotten proceeds) are currently held in New York accounts of the Relief Defendants, BROWN, titled in the name SIX SIS AG a/k/a SIX Securities Services on behalf of the Defendant, JUROJIN.

26. BROWN BROTHERs upon service of Judge Marrero's September 4, 2013 Order to Show Cause, effected a voluntary freeze upon the subject SIX SIS AG accounts and funds held therein upon which Plaintiff relies in this litigation. Declaration of Roy Vinkemeier.

**THE INITIAL ORDER TO SHOW CAUSE and THE ELUSIVE DEFENDANTS**

27. Initially Plaintiff by his counsel brought an Order to Show Cause before Judge Marerro in September 2013. (DE#2).

28. Almost immediately we were informed by counsel for BROWN BROTHERS that none of the named defendants were direct clients of BROWN BROTHERS but that the subject shares were held in the accounts. As a result of this information, Plaintiff's counsel did not continue to process the original Order to Show Cause in that the relief which had been requested, service of the Defendants through BROWN BROTHERS, has assumed a direct nexus between BROWN BROTHERS and at least JUROJIN.

29. Subsequently, it also appeared that service upon the named Defendants which Plaintiff did not believe were clients of BROWN BROTHERS, AUGSBACH, JACO, KLEIN, and

TRINITY would be difficult.

30. First, we learned through first rumor and then information from our Florida process server that AUGSBACH had committed suicide in the Spring of 2013. See **Exhibit G**.

31. Second, because service of an LLC under both New York and Florida law entails personal service upon a member of the LLC, and because AUGSBACH is apparently the only member of JACO, a Nevada LLC, we next attempted service upon any registered agent given the information concerning AUGSBACH's death. However, it appeared that JACO's authority was revoked in August 2013, after we learned of the problem but before the action was commenced. **Exhibit H**.

32. Defendant KLEIN has been skip traced and sought for by Plaintiff's counsel through several internet services and people finders as well as all known social media. It appears to Plaintiff's counsel that Defendant KLEIN is a person who avoids any means of being found. Perhaps it is because he has had legal difficulties in the past including criminal conviction for wire, mail and securities fraud. See, **Exhibit I**.

33. Defendant TRINITY, by its very design, is incapable of being served with normal means of process even if it were a domestic company instead of a Costa Rican. In fact, to effect a trade on US stock using TRINITY, one needs to have the stock transferred to a friendly broker/service which has an actual trading account in a US brokerage firm. See, McCartney Declaration.

34. The defendant, TRINITY, is an offshore brokerage that McCartney used and AUGSBACH used it also. Trinity has no offices or telephone lines running into the United States. It is believed that it is headquartered in Costa Rica and it is solely an internet based trading service. See, McCartney Declaration.

35. Plaintiff's counsel has repeatedly attempted to contact TRINITY by telephone and email and has received no responses. The only physical address that can be ascertained for this entity

is through WHOIS.com which identified TRINITY's web hosting service (REGISTER.COM) and registering person as a BRIAN GILMARTIN in Chicago, IL with an email address as BRIANGLM@TRINITYASSET.com.  See, **Exhibit J**.

36.     Finally, Plaintiff's counsel has attempted to serve Defendant JUROJIN with process as well as the initial Order to Show Cause at its known principal place of business in Panama City Panama.  See, **Exhibit K**.  No response has been receive from this Panamanian corporation and Panama has not signed the Hague Convention.

37.     In December 2013, a California attorney named Irving Einhorn emailed and wrote to the undersigned about the litigation.  **Exhibit L** .  Despite these writings, no appearance was ever entered for JUROJIN (Einhorn gave us the first information regarding AUGSBACH's death).

38.     Mr. Einhorn variously stated that he had been contacted by JUROJIN and had other contact with TRINITY.  He contradicted himself however indicating on separate occasions that he represented each of them also at no time ever clearly identifying either of them as a retained client.

**GOOD CAUSE EXISTS FOR ALTERNATE SERVICE MEANS**

39.     It is abundantly clear that despite actual knowledge of the lawsuit, the Defendants which are not dead or defunct/revoked either do not wish to appear in the action because they have engaged in a short fraud against the Plaintiff or are engaged in some type of omnibus trading account maintenance and activity which they do not want to discuss in a public forum or are lying low off the public radar for some similar or historic reason.

40.     It is also abundantly clear, given the transfer records and DTC sheets regarding Gatekeeper USA stock, particularly the 600,000 induced from Plaintiff (now worthless), that

TRINITY and JUROJIN are intentionally constructed in a non-Hague Convention country and in cyberspace with no physical addresses, so as to avoid being easily haled into court in the United States or to insulate their transactions from US regulatory oversight.

41. Given the totality of circumstances, including the rather large number of Defendants with which the Plaintiff has and will have difficulty affecting service upon using normal means, it is respectfully submitted that adequate grounds exist for an order granting plaintiff leave to serve through alternate means.

42. It is further respectfully submitted, that the Plaintiff being of limited financial means, deference should be afforded Plaintiff on the issue of service so as to avoid expense where possible, particularly where it appears that badges of fraud are prevalent and a construct for avoiding process has been engineered such as the facts indicate here.

43. Finally, I respectfully request that the Court forgive my tardiness on the pre-ordered Motion for Alternate service as was discussed in this Court's Order of September 16, 2014 directing that I show cause why without prejudice dismissal should not be issued.

44. In addition to Plaintiff's limited financial means, the undersigned is a sole practitioner who was on vacation in August until the 21st of that month, had lost his computer equipment while on vacation and despite replacement, could not file on the appointed dates. Thereafter the undersigned was engaged on a two week trial in Camden, NJ (MUSICK v. ELITE EXPRESS, CAM-L-002662-11, Judge Michael Kassel) until September 5, 2014. In the 11 days following that grueling trial, despite my attempt to catch up on overdue work, I could not address the motions required in this case due to other more pressing matters.

45. It is respectfully requested that the clearly surreptitious conduct and construct of the Defendants in this action not remain unaddressed because of Plaintiff's counsel's over-weighted work schedule and inability to address these issues in a more timely manner.

46. Accordingly, rather than dismissal without prejudice, I respectfully request relief in the form of leave to serve by alternate means and no later than October 31st the non-appearing Defendants by the following means:

   a. Defendant, JACO FINANCIAL LLC, now defunct and revoked, upon its former registered agent, Business Filings Incorporated, Carson City, NV;

   b. Defendant, JACK AUGSBACH, deceased, by service by service upon the Estate of Jack Augsbach which is currently believed to be maintained by his sister in Palm Beach County Florida;

   c. Defendant, TRINITY ASSET SERVICE, INC., by publication through email to its registered IT personnel and by substituted service to its web service provider REGISTER.com;

   d. Defendant, JUROJIN INCORPORATED, by service upon its broker/clearing house and the client of Brown Brothers, SIX SIS AG, a/k/a SIX Securities Services, in that the subject Gatekeeper USA Inc. stock and money proceeds are now resident in New York with Brown Brothers (which consensually holds them frozen pending further order of this Court); and

   e. Defendant, MARSHALL KLEIN, by publication in the largest circulated paper in the San Diego, California metropolitan area.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 29th day of September, 2014

/S/ Paul W. Verner
PAUL W. VERNER