**EXHIBIT "A"**

**JUDGE MARRERO**

## IN THE UNITED STATES DISTRICT COURT
## FOR SOUTHERN DISTRICT OF NEW YORK

ROY VINKEMEIER,                              :

               Plaintiff,       :

      vs.                                    :

JACO FINANCIAL LLC,                          :
JACK AUGSBACH,                               :
TRINITY ASSET SERVICES a/k/a                 :
    TRINITY ASSET SERVICES, COM.,        :
JUROJIN INCORPORATED and                     :
MARSHALL KLEIN,                              :

           Defendants.        :

    And                                      :

BROWN BROTHERS HARRIMAN and                  :
BROWN BROTHERS HARRIMAN TRUST                :
    COMPANY, N.A.,                       :

        Relief Defendants.     :

Case No.: **CV 5934**

**COMPLAINT**



RECEIVED
AUG 2 2 2013
U.S.D.C. S.D.N.Y.
CASHIERS

Plaintiff, ROY VINKEMEIER, by his attorneys, VERNER SIMON, as and for his Complaint states:

### SUMMARY

1.    This Complaint stems from a complex scheme to defraud stock owners of their shares of stock, and then to launder the ill-gotten gains, in the form of securities and proceeds from sale of the securities, through a sophisticated network and enterprise.

2.    Most of the enterprise remains headquartered and operating outside the U.S. states, and is operated through computer online communications, although its design is to defraud citizens of

**IN THE UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ROY VINKEMEIER, | : | |
| | : | Case No.: |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| JACO FINANCIAL LLC, | : | |
| JACK AUGSBACH, | : | **COMPLAINT** |
| TRINITY ASSET SERVICES a/k/a | : | |
|     TRINITY ASSET SERVICES, COM., | : | |
| JUROJIN INCORPORATED and | : | |
| MARSHALL KLEIN, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| And | : | |
| | : | |
| BROWN BROTHERS HARRIMAN and | : | |
| BROWN BROTHERS HARRIMAN TRUST | : | |
|     COMPANY, N.A., | : | |
| | : | |
| Relief Defendants. | : | |

Plaintiff, ROY VINKEMEIER, by his attorneys, VERNER SIMON, as and for his Complaint states:

## SUMMARY

1.     This Complaint stems from a complex scheme to defraud stock owners of their shares of stock, and then to launder the ill-gotten gains, in the form of securities and proceeds from sale of the securities, through a sophisticated network and enterprise.

2.     Most of the enterprise remains headquartered and operating outside the U.S. states, and is operated through computer online communications, although its design is to defraud citizens of

the United States and the effects and damages resulting from the fraud is felt by citizens of the United States in the United States.

3.      The fraudulent enterprise is specifically designed so as to conceal the identity of the individual fraudsters and other members of the enterprise, their criminal transactions and the ill-gotten gains/proceeds earned by the enterprise and its members.

4.       The fraudulent enterprise has defrauded similarly situated stock owners such as the Plaintiff in this action of various stock issues on at least ten (10) occasions in the last five (5) years.


## PARTIES

5.      Plaintiff, ROY VINKEMEIER (hereinafter "VINKEMEIER"), is an individual domiciled in the state of Minnesota  residing at  3348 Bellaire Ave., White Bear Lake, MN 55110.

6.      Defendant, JACO FINANCIAL LLC (hereinafter "JACO"), is a Nevada limited liability company with offices located at 1801 East Lake Road, #13F, Palm Harbor, Florida 34695.

7.      Defendant, JACK AUGSBACH (hereinafter "AUGSBACH"), is an individual domiciled in the state of Florida residing at 1801 East Lake Road, #13F, Palm Harbor, Florida 34695 and is the Managing Member of JACO FINANCIAL LLC.

8.      Defendant, TRINITY ASSET SERVICES a/k/a TRINITY ASSET SERVICES.COM. (hereinafter "TRINITY"), foreign corporation organized and operating under the laws of the Bahamas which represents on its website that it has its principal place of business in Costa Rica. As set forth in paragraphs 29-32 below, its website, *trinityassetservices.com* is accessed only through passcodes and logins and is listed as operating out of Costa Rica with an intentionally obfuscated website administration operating out of France.

9.      Defendant, MARSHALL KLEIN (hereinafter "KLEIN"), is an individual domiciled in the

state of California residing in San Diego and is the individual who controls and operates Defendant TRINITY.

10.    Defendant, JUROJIN, INC. (hereinafter "JUROJIN"), is a foreign corporation organized and operating under the laws of the Republic of Panama, domiciled in Panama, with its principal places of business located at Samuel Lewis & 58th Ave., PH,  ADR Technologies Tower, 7th Floor, Local 7-A, Panama 15703631.

## RELIEF DEFENDANTS

11.    Relief Defendants, BROWN BROTHERS HARRIMAN and BROWN BROTHERS HARRIMAN TRUST NA (hereinafter collectively "BROWN"), are registered with and regulated by the Securities and Exchange Commission and New York State banking laws.

12.    BROWN, (also formerly known as BROWN BROTHERS & CO.), is a private bank which provides commercial banking, investment management, brokerage, and trust services to private companies and individuals.  BROWN also performs merger advisory, foreign exchange, custody services, commercial banking, and corporate financing services.  BROWN was founded in 1818 and is based in New York, New York with its principal place of business at 140 Broadway, New York, New York 10005.

13.    BROWN's registered New York agent for domestic service of process is CT Corporation Systems, 111 8th Avenue, 13th Floor, New York, NY 10011.

14.    BROWN physically maintains and possesses the Defendant, JUROJIN's, securities trading account in New York which account is actually controlled by the Defendants, AUGSBACH, JACO, KLEIN and TRINITY, and which currently contains the Plaintiff's fraudulently transferred Gatekeeper USA stock as described more fully below.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, in that there is complete diversity of citizenship between all plaintiffs and defendants.

16.     The matter in controversy exceeds the sum of $ 75,000, exclusive of interest and costs.

17.      This Court also has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1964(c), because this case arises under the laws of the United States, based on claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq.

18.      Venue is proper in this district under 28 U.S.C. § 1391 and 18 U.S.C. § 1965 , because the RELIEF DEFENDANTs'  principal place of business is within the Southern District of New York, a substantial part of the events giving rise to Plaintiffs' claims occurred in this judicial district and the corpus of the ill-gotten gains derived by the Defendants' fraudulent scheme is located in the Defendants' trading accounts held in this district by the RELIEF DEFENDANTs which are domiciled and conduct business within this District.

19.     The Defendants, AUGSBACH, JACO, KLEIN, TRINITY and JUROJIN, directly and indirectly, have made use of the means and instrumentalities of interstate commerce, and the means and instruments of transportation and communication in interstate commerce, in connection with the transactions, acts, practices, and courses of business alleged in this Complaint with the effects of the fraud occurring and continuing to occur within this District.

## FACTS

20.     On or about December 3, 2012  the plaintiff, VINKEMEIER, was defrauded by the

fraudulent  scheme/enterprise of the Defendants and thereafter bilked out of approximately 600,000 shares of Gatekeeper USA stock valued at the time at $750,000 (hereinafter "Plaintiff's Gatekeeper stock").

21.     At all relevant times, the Defendants, JACO, AUGSBACH, KLEIN, TRINITY and JUROJIN, are all members of a fraudulent scheme and enterprise and these Defendants continue to illegally possess and hypothecate the Plaintiff's Gatekeeper stock through at least June 2013 for their own pecuniary benefit to the damage of Plaintiff, VINKEMEIER.

22.      The specific facts describing then Defendants' scheme and fraud against the Plaintiff, VINKEMEIER, are stated as follows below.

23.     First, from at least October 28, 2012, the Defendant, AUGSBACH, through his company, JACO, held themselves out through websites on the internet to VINKEMEIER and other similarly situated investing members of the public as sophisticated and qualified "financial advisors".

24.     In response to the Defendants AUGSBACH's and JACO's, false internet solicitations, on or about December 3, 2012, VINKEMEIER was induced by AUGSBACH, JACO, KLEIN and TRINITY to seek a collateral loan from Defendants, AUGSBACH and JACO, which AUGSBACH, JACO, TRINITY and KLEIN represented to VINKEMEIER would be "secured" by Plaintiff's Gatekeeper stock.

25.     In furtherance of the fraudulent scheme, from October 28, 2012 through December 3, 2012, Defendants, AUGSBACK and KLEIN made numerous fraudulent misrepresentations and omitted material facts to VINKEMEIER concerning this purported secured loan, to wit:

      a.  AUGSBACH initially called many times a day, stating to Plaintiff that he and JACO loved the Gatekeeper company, that AUGSBACH and JACO could provide corporate financing for the company Gatekeeper in the millions of dollars;

b. AUGSBACH falsely stated to Plaintiff that he and JACO would facilitate Plaintiff and Gatekeeper in obtaining loans and financing to get Gatekeeper on the bulletin boards and trading publicly and would support the Gatekeeper company for purposes of the Dow Jones report;

c. AUGSBACH falsely stated to Plaintiff that he and JACO would obtain for Plaintiff and Gatekeeper financing in the amount of $300,000 for a term of one year in consideration for 20,000 shares stock the 40,000 shares to be paid to JACO upon the completion of the loan;

d. AUGSBACH and KLEIN thereafter falsely stated to Plaintiff that they and the companies JACO and TRINITY would obtain for Plaintiff and Gatekeeper the financing if Plaintiff would transfer 600,000 shares of Gatekeeper stock to JACO as "collateral";

e. All of the aforesaid statements were false when made to the Plaintiff by the Defendants AUGSBACH, KLEIN and JACO and falsely made solely to induce Plaintiff to transfer to 600,000 shares of Gatekeeper stock to JACO in order that it could be converted and hypothecated by the Defendants as sated more fully herein.

f. Subsequently after the transfer of Plaintiff's Gatekeeper stock was made, AUGSBACH, JACO, KLEIN and TRINITY began trading and hypothecating the Plaintiff's Gatekeeper stock, not to support any loan or financing application on behalf of Plaintiff, but for their own secreted benefit and pecuniary gains.

26. Defendants, AUGSBACH and JACO, falsely represented to VINKEMEIER that they, as VINKEMEIER's "financial advisors", would hold the Plaintiff's Gatekeeper stock in safekeeping for the benefit of VINKEMEIER, as collateral against the proposed loan which VINKEMEIER

was seeking and to secure future payment to AUGSBACH and JACO for the preparation of the loan documents and contract.

27.     As a direct result of the Defendants' fraudulent misrepresentations and omissions of material fact, VINKEMEIER was induced by Defendants, AUGSBACH, JACO, and KLEIN to sign over to 600,000 shares of Plaintiff's Gatekeeper stock which VINKEMEIER did on December 3, 2012.

28.     Immediately upon receiving the signed stock certificates from VINKEMEIER, Defendants AUGSBACH and JACO, together with KLEIN,  immediately arranged to have the stock credited to their own brokerage accounts located at Defendant, TRINITY ASSET SERVICES (hereinafter "TRINITY").

29.     TRINITY is an offshore online brokerage that purports to be a Bahamian corporation and purports to have offices in Costa Rica.  Its website, *trinityassetservices.com* is accessed only through passcodes and logins and is listed as operating out of Costa Rica with an intentionally obfuscated website administration operating out of France [Upon information and belief, RELIEF DEFENDANTs possess correct and effective addresses and contact information for TRINITY].

30.     TRINITY's Internet traffic data and records indicates that nearly 100% of the traffic is from the United States and concerns similar share transfers and purported "brokerage services".

31.     In addition, although TRINITY purports to be operating out of Costa Rica and its employees provide Costa Rican telephone numbers, TRINITY also provides "toll-free" numbers that are intended to be free from the US but which, in reality, cannot actually be called from outside the U.S.

32.     Upon information and belief, as a member of the fraudulent enterprise, KLEIN has designed and intentionally operates TRINITY in this manner, in furtherance of the fraudulent

scheme and enterprise, as well as to avoid the reach of the U.S. securities law enforcement.

33.     Despite their business of accepting and soliciting securities business from U.S. based investors such as Plaintiff, VINKEMEIER, by and through the United States, KLEIN and TRINITY are not registered in any capacity with the Securities and Exchange Commission, FINRA or any other U.S. regulatory agency.

34.      Upon specific instructions from KLEIN and TRINITY, AUGSBACH and JACO, had TRINITY combine all of the Plaintiff's Gatekeeper stock certificates into one single certificate which was thereafter transferred again into the name of Defendant, JUROJIN, a Panamanian company as set forth above.  [Upon information and belief, RELIEF DEFENDANTs possess correct and effective addresses and contact information for JUROJIN].

35.     Transfer agent records confirm the aforesaid transfers and movements of the Plaintiff's Gatekeeper stock certificates.

36.     Once transferred to JUROJIN, legal possession of the Plaintiff's Gatekeeper stock was subsequently transferred to the RELIEF DEFENDANTs,  BROWN, located at 140 Broadway New York New York, into a JUROJIN brokerage account.

37.     Immediately after the transfer to BROWN, the Plaintiff's Gatekeeper stock appeared on the books of BROWN as confirmed weekly by the Depository Trust Corporation ("DTC").

38.     These BROWN DTC confirmations correspond directly in the private accounts of AUGSBACH, JACO and KLEIN as seen in the TRINITY online accounts for these Defendants.

39.     The fraudulent enterprise enabled Defendants, AUGSBACH, JACO, and KLEIN, to liquidate the Plaintiff's Gatekeeper stock, transfer those shares freely to any third party with an account also held at TRINITY.

40.     Likewise, the Defendants, AUGSBACH, JACO, and KLEIN, could then liquidate the

shares and wire transfer funds to themselves or any third party they desired.

41.     Immediately after the TRINTY accounts were obtained by the fraudsters and BROWN received transfer of Plaintiff's fraudulently procured Gatekeeper stock, the Defendants, AUGSBACH, JACO, and KLEIN, immediately commenced liquidating the Plaintiff's Gatekeeper shares and collected and distributed the fraudulent proceeds among themselves.

42.     On January 29, 2013 and March 12, 2013, Plaintiff, VINKEMEIER, made demand of the Defendants, AUGSBACH and JACO, for return of Plaintiff's Gatekeeper stock.

43.     Immediately after the demand for return was made by Plaintiff, on February 2013 Defendant KLEIN transferred 160,000 shares of the Plaintiff's Gatekeeper stock from his personal account at TRINITY to JACO's account at TRINITY.

44.     To perpetrate the fraud and hide their identities, the Defendants, TRINITY, AUGSBACH, JACO, and KLEIN, masked the identities of AUGSBACH, JACO, and KLEIN by making trades through the online account at the unregistered TRINITY brokerage while actually utilizing the account at BROWN held in the name of Defendant, JUROJIN, which Defendants TRINITY, KLEION, AUGSBACH and JACO controlled and used as an omnibus securities account.

45.     As a direct result of their fraudulent scheme, the Defendants, AUGSBACH, JACO, KLEIN, TRINITY and JUROJIN integrally participated in the fraudulent enterprise and derived the financial proceeds of the unauthorized sales of the Plaintiff's Gatekeeper stock obtained through the fraudulent scheme.

46.     The Defendants, AUGSBACH, JACO, KLEIN, TRINITY and JUROJIN, realized profits totaling at least $150,000 from liquidating the ill-gotten shares of Plaintiff's Gatekeeper stock in their accounts.

47.     Plaintiff's remaining shares of the fraudulently acquired/transferred Gatekeeper USA

stock, as well as the proceeds of the sale of that fraudulently acquired stock (the Defendants' ill-gotten proceeds) are currently held in New York accounts of the Relief Defendants, BROWN, titled in the name of Defendant, JUROJIN.

48.     By virtue of theirs and the enterprise's fraudulent conduct and scheme, the Defendants, AUGSBACH, JACO, KLEIN,  TRINITY and JUROJIN, have engaged, and unless  enjoined will continue to engage, in violations of 28 U.S.C. Section 1964 (the Civil RICO Act), common law fraud,   federal securities fraud, state securities fraud, and numerous industry and anti-money laundering regulations prohibiting the transfer of money and/or securities to third party brokerage accounts and from brokerage accounts to third-party accounts without matching titles and tax identification numbers.

## **CLAIMS FOR RELIEF**

### **COUNT I**

#### *Civil RICO*

49.     The Plaintiff, VINKEMEIER, re-alleges and incorporates by reference each of the preceding paragraphs of the Complaint above as though fully set forth here at length.

#### *Enterprise*

50.     The racketeering enterprise, within the meaning of 18 U.S.C. Section 1961, is an association in fact of AUGSBACK, KLEIN, TRINITY and JUROJIN, and other presently unknown individuals organized around JACO FINANCIAL LLC based on each defendant's particular function within the enterprise. These various associates function as a continuing unit.

51.     In the alternate, the racketeering enterprise is JACO, and AUGSBACK is employed by and associated with JACO, while KLEIN, TRINITY and JUROJIN were associated with JACO, the enterprise.

52.     The enterprise is an entity separate and apart from the pattern of activity in which it engages, to wit:

    a.  the enterprise has a distinct structure based on the essential functions of operating what defendants refer to as "JACO FINANCIAL SERVICES", e.g., marketing functions, security functions, financing functions, etc.;

    b.  the enterprise has employed numerous employees in order to discharge the functions of the "JACO FINANCIAL SERVICES".

    c.   the enterprise has a distinct structure including the offices of "JACO FINANCIAL, LLC", investor advertising force, marketing force and stock investment force.

    d.   the enterprise has promulgated rules and regulations to organize the enterprise.

53.     The COMMON PURPOSE of the enterprise is: (1) to defraud unsuspecting owners of stocks from possession and control of their shares by convincing the owners that they enterprise is a "investor adviser";  (2) to thereafter convince the owners of the shares to transfer possession and control of said stocks to the defendants by fraudulently representing that said transfer is necessary as "collateral" for money loans purportedly to be made to the stock owners by the investment advisors; and (3) to thereafter convert and possess said shares of stock through a series of sham "offshore" companies which purport to have legal ownership of the shares; and (4) to then trade, sell, hypothecate said shares and make monies through the possession and control of the converted shares after depositing them in brokerage houses under foreign corporate names.

54.     The enterprise is engaged in interstate or foreign commerce.

### *Pattern Of Unlawful Racketeering Activity*

55.     All of the predicate acts of racketeering activity are directly related to the fraudulent and false misrepresentation that JACO was an investment advisor as defined by the numerous representations made to plaintiff, other owners of stock and websites.

56.     All of the predicate acts of racketeering activity are part of the nexus of the affairs and functions of the racketeering enterprise.

57.     The defendants were enabled to commit the predicate offenses by virtue of their position in the enterprise or involvement in or control over the affairs of the enterprise.

58.     All of the predicate acts of racketeering activity occurred after the effective date of 18 U.S.C. Section 1961 et. seq.

59.     The predicate acts of racketeering activity began on or about December 2009.

60.     The pattern of racketeering activity is currently ongoing and open ended, and threatens to continue indefinitely unless this Court enjoins the racketeering activity.

61.     Numerous schemes have been completed involving repeated criminal conduct that by its nature projects into the future with a threat of repetition.

62.     The predicate acts have the same or similar purposes, results, participants, victims, and methods of commission.

### *Summary Of Each Defendant's Association*
### *With The Racketeering Enterprise*
### *And Participation In The Pattern Of Racketeering Activity*

63.     At all times herein the defendants made numerous interstate telephone calls, in the course of business, for purposes of carrying out the various schemes detailed supra.

64.     Defendant AUGSBACH, and his company, Defendant JACO, were associated with the racketeering enterprise as its primary controller and engaged in the fraud by violating JACOs corporate policy:

   a.  18 U.S.C. 1962(a) by using or investing, directly or indirectly, proceeds for the operation of the racketeering enterprise which were received from a pattern of racketeering which the defendant participated as principal by committing numerous violations of 18 U.S.C. 1951, fraud in the sale of securities in violation by violating Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5, 18 U.S.C. 1343, and 18 U.S.C. 1341 as detailed herein; and/or

   b.  18 U.S.C. 1962(c) by conducting or participating directly in the conduct of the racketeering enterprise through a pattern of racketeering activity by committing numerous violations of 18 U.S.C 1951, fraud in the sale of securities by violating Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5, 18 U.S.C. 1343, and 18 U.S.C. 1341 as detailed herein; and/or

   c.  18 U.S.C. 1962(d) by conspiring to violate any of the provisions of 18 U.S.C. 1962; and/or

   d.  aided and abetted in the commission of at least two predicate offenses which were part of the pattern of racketeering in violation of the common law doctrine of aiding and abetting.

65.     Alternatively, Defendant AUGSBACH, was associated with the racketeering enterprise as its primary manager, and violated:

   a.  18 U.S.C. 1962(a) by using or investing, directly or indirectly, proceeds for the operation of the racketeering enterprise which were received from a pattern of

racketeering which the defendant participated as principal by committing numerous violations of securities fraud, wire fraud and mail fraud as detailed herein; and/or

b. 18 U.S.C. 1962 (b) by acquiring and/or maintaining an interest in or control of the racketeering enterprise by a pattern of racketeering activity consisting of numerous violations of securities fraud, wire fraud and mail fraud as detailed herein; and/or

c. 18 U.S.C. 1962(c) by conducting or participating directly in the conduct of the racketeering enterprise through a pattern of racketeering activity by committing numerous violations of 18 U.S.C 1951, fraud in the sale of securities by violating Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5, 18 U.S.C. 1343, and 18 U.S.C. 1341 as detailed herein; and/or

d. 18 U.S.C. 1962(d) by conspiring to violate any of the provisions of 18 U.S.C. 1962; and/or

e. aided and abetted in the commission of at least two predicate offenses which were part of the pattern of racketeering in violation of the common law doctrine of aiding and abetting.

66.     Defendant KLEIN, is associated with the racketeering enterprise and violated:

a. 18 U.S.C. 1962(a) by using or investing, directly or indirectly, proceeds for the operation of the racketeering enterprise which were received from a pattern of racketeering which the defendant participated as principal by committing numerous violations of securities fraud, wire fraud and mail fraud as detailed herein; and/or

b. 18 U.S.C. 1962 (b) by acquiring and/or maintaining an interest in or control of the racketeering enterprise by a pattern of racketeering activity consisting of numerous violations of securities fraud, wire fraud and mail fraud as detailed herein; and/or

    c.  18 U.S.C. 1962(c) by conducting or participating directly in the conduct of the racketeering enterprise through a pattern of racketeering activity by committing numerous violations of 18 U.S.C 1951, fraud in the sale of securities by violating Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5, 18 U.S.C. 1343, and 18 U.S.C. 1341 as detailed herein; and/or

    d.  18 U.S.C. 1962(d) by conspiring to violate any of the provisions of 18 U.S.C. 1962; and/or

    e.  aided and abetted in the commission of at least two predicate offenses which were part of the pattern of racketeering in violation of the common law doctrine of aiding and abetting.

67.    Defendant TRINITY, is associated with the racketeering enterprise and violated:

    a.  18 U.S.C. 1962(c) by conducting or participating directly in the conduct of the racketeering enterprise through a pattern of racketeering activity by committing numerous violations of 18 U.S.C 1951, fraud in the sale of securities by violating Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5, 18 U.S.C. 1343, and 18 U.S.C. 1341 as detailed infra; and/or

    b.  18 U.S.C. 1962(d) by conspiring to violate any of the provisions of 18 U.S.C. 1962; and/or

    c.  aided and abetted in the commission of at least two predicate offenses which were part of the pattern of racketeering in violation of the common law doctrine of aiding and abetting.

68.    Defendant JUROJIN, is associated with the racketeering enterprise and violated:

a. 18 U.S.C. 1962(c) by conducting or participating directly in the conduct of the racketeering enterprise through a pattern of racketeering activity by committing numerous violations of 18 U.S.C 1951, fraud in the sale of securities by violating Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5, 18 U.S.C. 1343, and 18 U.S.C. 1341 as detailed infra; and/or

b. 18 U.S.C. 1962(d) by conspiring to violate any of the provisions of 18 U.S.C. 1962; and/or

c. aided and abetted in the commission of at least two predicate offenses which were part of the pattern of racketeering in violation of the common law doctrine of aiding and abetting.

### Summary Of Plaintiff's Injury To Business Or Property

69.    Plaintiff VINKEMEIER was deprived of and lost his Gatekeeper stock as described here above valued at approximately $750,000.

70.    Plaintiff VINKEMEIER was injured in his business and/or property as a direct result of the pattern of racketeering by the Defendants acting in conspiracy and concert.

71.    As set forth more fully above, the Defendants, by engaging in the conduct described above, directly or indirectly, in the fraud to illegally acquire and hypothecate Plaintiff's Gatekeeper stock for their own pecuniary gain, by the use of means or instruments of transportation or communication in interstate commerce or by the use of the mails:

a. negligently employed devices, schemes or artifices to defraud;

b. with scienter obtained money or property by means of untrue statements of material fact or by omitting to state material facts necessary in order to make the statements

made, in the light of the circumstances under which they were made, not misleading; or

c.  negligently engaged in transactions, practices or courses of business which operated or would operate as a fraud or deceit upon the purchasers of such securities.

72.    By reason of the foregoing, the Defendants have violated Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].


**COUNT II**

*Violations of Section 10(b)*
*Of The Exchange Act [ 15 U.S.C. § 78 j(b) ]*
*and Rule 10(b)(5) [ 17 C.F.R. § 240.10b-5 ]*


73.    The Plaintiff, VINKEMEIER, re-alleges and incorporates by reference each of the preceding paragraphs of the Complaint above as though fully set forth here at length.

74.    At the times alleged in this Complaint, the Defendants directly and indirectly:

a.  Employed devices, schemes, and artifices to defraud including but not limited to: (1) the manipulation of multiple sham offshore corporations whose only function was to establish brokerage accounts to conceal the identities of the individual Defendants and their fraudulent scheme; (2) mass marketing on the internet of the enterprises scheme to lure individual investors into transferring their stock to the control of the Defendants; (3) the multiple transfer of fraudulently acquired stock between the various accounts of the Defendants without any consideration or legitimate business purpose; and (4) the eventual transfer of stock and funds from the proceeds of sale of the fraudulently acquired stock to illegitimate brokerage accounts without any receipt of consideration or any legitimate business purpose.

b.   Made untrue statements of material fact including representations that AUGSBACH and JACO had thoroughly investigated the purpose for which the transfers of Plaintiff's Gatekeeper stock was purportedly intended, that the commercial loan transaction and required transfer of the Plaintiff's Gatekeeper stock was a legitimate investment, and that transfer of the Plaintiff's Gatekeeper stock were safe when, in fact, transfer of the Plaintiff's Gatekeeper stock was neither safe nor legitimate AUGSBACH and JACO not only never conducted a thorough inspection of the purported transfer of stock but in fact knew it was a scheme to defraud;

c.   Failed to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

d.   Engaged in acts, practices, and courses of business that operated as a fraud and deceit on purchasers and sellers of such securities, all as more fully set forth above.

75.   The Defendants acted with knowledge and reckless disregard as to the truth of their communications described above of the activities described above.

76.   By reason of such activities, Defendants have violated Section 10(b) of the Exchange Act [15 U.S.C. § 78 j(b) ] and Rule 10b(5) [ 17 C.F.R. § 240.10b-5 ], promulgated under the Act ("Rule 10b-5 Violations").

77.    As a direct and proximate result of Defendants' Rule 10b-5 Violations, as described above, Plaintiff was defrauded and his Gatekeeper stock was converted and he lost the value of his Gatekeeper stock as well as significant profits it could otherwise have made.

### COUNT III

### *Violations of State Securities Laws*

78.     The Plaintiff, VINKEMEIER, re-alleges and incorporates by reference each of the preceding paragraphs of the Complaint above as though fully set forth here at length.

79.     At all relevant times, Defendants , directly and indirectly:

a.   Employed devices, schemes, and artifices to defraud including but not limited to: (1) the manipulation of multiple sham offshore corporations whose only function was to establish brokerage accounts to conceal the identities of the individual Defendants and their fraudulent scheme; (2) mass marketing on the internet of the enterprises scheme to lure individual investors into transferring their stock to the control of the Defendants; (3) the multiple transfer of fraudulently acquired stock between the various accounts of the Defendants without any consideration or legitimate business purpose; and (4) the eventual transfer of stock and funds from the proceeds of sale of the fraudulently acquired stock to illegitimate brokerage accounts without any receipt of consideration or any legitimate business purpose.

b.    Made untrue statements of material fact including representations that AUGSBACH and JACO had thoroughly investigated the purpose for which the transfers of Plaintiff's Gatekeeper stock was purportedly intended, that the commercial loan transaction and required transfer of the Plaintiff's Gatekeeper stock was a legitimate investment, and that transfer of the Plaintiff's Gatekeeper stock were safe when, in fact, transfer of the Plaintiff's Gatekeeper stock was neither safe nor legitimate AUGSBACH and JACO not only never conducted a thorough inspection of the purported transfer of stock but in fact knew it was a scheme to defraud;

    c.   Failed to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

    d.  Engaged in acts, practices, and courses of business that operated as a fraud and deceit on purchasers and sellers of such securities, all as more fully set forth above.

80.    The Defendants acted with knowledge and reckless disregard as to the truth of its communications described above.

81.    As a proximate result of Defendants' conduct, material misrepresentations and omissions, transactions, practices, and course of business, Plaintiff was defrauded and his Gatekeeper stock was converted and he lost the value of his Gatekeeper stock as well as significant profits it could otherwise have made.

82.    Defendants' conduct, material misrepresentations, and omissions violated the laws of many states, including but not limited New York, Florida and California.

## COUNT IV

### *Common Law Fraud*

83.    The Plaintiff, VINKEMEIER, re-alleges and incorporates by reference each of the preceding paragraphs of the Complaint above as though fully set forth here at length.

84.    Defendants, AUGSBACH, JACO, KLEIN, TRINITY and JUROJIN, fraudulently represented to the Plaintiff that AUGSBACH and JACO were qualified financial advisors and that the transfer of his Gatekeeper USA shares of stock was commercially required to procure for Plaintiff a loan.

85.    These representations were known to be false when they were made to Plaintiff by the Defendants.

86.    In direct reliance upon the Defendants' fraudulent statements, Plaintiff transferred possession and control of his Gatekeeper USA shares worth in excess of $750,000 to the Defendants.

87.    Thereafter the Defendants converted and assumed ownership and control of the Plaintiff's Gatekeeper USA shares as set forth more fully above,  and liquidated them so as to distribute the fraudulently obtained proceeds of the liquidation amongst themselves.

88.    The Defendants thereby, by engaging in the conduct described above, directly or indirectly, in connection with the purchase or sale of securities, by the use of means or instrumentalities  of interstate commerce, or of the mails, or of a facility of a national securities exchange, with scienter:

      (a)    employed devices, schemes or artifices to defraud;

      (b)    made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

      (c)    engaged in acts, practices or courses of business which operated or would operate as a fraud or deceit upon the Plaintiff or other persons.

89.    By reason of the foregoing, the Defendants have engaged in common law fraud against the Plaintiff.

90.    By reason of the foregoing, the Plaintiff has been damaged in an amount believed to be in excess of $750,000 and which will be proven at trial.

## COUNT V

### *Claim For Disgorgement Against*
### *The BROWN Relief Defendants*
### *As Custodian of Plaintiff's Shares and Funds*

91.     The Plaintiff, VINKEMEIER, re-alleges and incorporates by reference each of the preceding paragraphs of the Complaint above as though fully set forth here at length.

92.     Relief Defendants BROWN received shares of Gatekeeper USA stock, funds and other property from one or more of the Defendants, which are the proceeds, or are traceable to the proceeds of the unlawful activities of the Defendants, as alleged herein.

93.     Relief Defendants BROWN obtained the funds and property alleged above as part of and in furtherance of the conspiracy, fraud and securities violations alleged herein and under circumstances in which it is not just, equitable or conscionable for it to retain the funds and property.  As a consequence, the Relief Defendants BROWN have been unjustly enriched.

94.     Further, BROWN should be compelled to maintain the assets of the Defendants pending prosecution of this action and to turn said assets over to Plaintiff upon entry of judgment against the Defendants of the preceding Counts of this Complaint.


## JURY DEMAND

95.     Plaintiff demand trial by jury as to all claims and causes so triable.


## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests that this Court enter a judgment which:

1. Permanently restrains and enjoins the Defendants, AUGSBACH, JACO, KLEIN, TRINITY and JUROJIN, and each of the Defendants' agents, servants, employees,

attorneys, and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from future fraudulent conduct as aforesaid;

2. Enters judgment against each of the Defendants, AUGSBACH, JACO, KLEIN, TRINITY and JUROJIN, pursuant to 28 U.S.C. Section 1964 (the Civil RICO Act), the Exchange Act and for common law fraud in the amount of One Million Dollars ($1,000,000) representing the lost value of the Plaintiff's converted stock, together with economic opportunity losses which would have otherwise been earned since the conversion in Plaintiff's own trading;

3. Orders the Defendants AUGSBACH, JACO, KLEIN, TRINITY and JUROJIN, to disgorge all shares of Gatekeeper USA stock and monies obtained through the illegal activities described above, plus prejudgment interest thereon as well as to pay civil penalties pursuant to 28 U.S.C.A. 1964 (the Civil RICO Act) including treble damages and attorneys' fees incurred by Plaintiff in prosecuting this action;

4. Enters a final judgment requiring Relief Defendants BROWN to disgorge any and all assets, including Gatekeeper stock and monies held, previously obtained as a result of Defendants' Civil RICO, Securities Law violations and fraudulent conduct alleged herein; and

5. Grants such other relief as this Court deems just and proper.

Dated: New York, New York
      August 19, 2013

                          Respectfully submitted,

                          */s/Paul Verner*

Paul Verner
VERNER SIMON
*Attorney for Plaintiff, ROY VINKEMEIER*
110 Wall Street, 11th Floor
New York, NY 10005
Tel: (212) 502-5500
Fax: (212) 502-5400
Email: pwverner@vernerlaw.com